UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

COLLEEN K.,

                  Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

**DECISION AND ORDER**

1:19-CV-01224 EAW

## <u>INTRODUCTION</u>

Represented by counsel, Plaintiff Colleen K. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 10; Dkt. 11), and Plaintiff's reply (Dkt. 12). For the reasons discussed below, the Commissioner's motion (Dkt. 11) is granted and Plaintiff's motion (Dkt. 10) is denied.

## BACKGROUND

Plaintiff protectively filed her application for SSI on October 20, 2015.  (Dkt. 6 at 22, 80).[1]  In her application, Plaintiff alleged disability beginning November 1, 2014, due to the following impairments: post-traumatic stress disorder; anxiety; fibromyalgia; asthma; migraines; inability to use right hand or arm.  (*Id.* at 22, 219, 254).  Plaintiff's application was initially denied on March 4, 2016.  (*Id.* at 22, 83-86).  At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Stephan Bell in Buffalo, New York, on August 30, 2018.  (*Id.* at 22, 43-70).  On September 21, 2018, the ALJ issued an unfavorable decision.  (*Id.* at 19-42).  Plaintiff requested Appeals Council review; her request was denied on July 18, 2019, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 8-13).  This action followed.

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more

---

[1]      When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.    Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 416.920(c).  If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

## I.    The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined

that Plaintiff had not engaged in substantial gainful work activity since October 20, 2015, the application date.  (Dkt. 6 at 25).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: polyneuropathy; history of rectal prolapse; depressive disorder; and anxiety disorder.  (*Id.*).  The ALJ further found that Plaintiff's medically determinable impairments of carpal tunnel syndrome, right wrist contusion, history of right distal radius fracture, "status post June 2014 right wrist open reduction, internal fixation," fibromyalgia, myalgia, cervicalgia, joint pain, mild obesity, abdominal pain, constipation, headaches, dermatitis, sinusitis, dyspnea, asthma, tobacco use disorder, tachycardia, sleep disturbance, insomnia, fatigue, malaise, and vitamin deficiencies were non-severe.  (*Id*.).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id*. at 26).  The ALJ particularly considered the criteria of Listings 11.14, 12.04, and 12.06 in reaching his conclusion.  (*Id*. at 22-23).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. § 416.967(a), but with the following additional limitations:

> [Plaintiff] is able to lift and/or carry ten pounds occasionally and less than ten pounds frequently, stand and/or walk for two hours in an eight-hour workday, and sit for six hours in an eight-hour workday.  Although [Plaintiff] is unable to climb ladders, ropes, and scaffolds, she is able to frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs.  [Plaintiff] is able to use her bilateral hands to frequently finger.  [Plaintiff] is occasionally able to work at unprotected heights and around moving mechanical parts, and she is occasionally able to operate a motor vehicle, but she is unable to work around vibration.  In addition, [Plaintiff] is able to

perform simple, routine, and repetitive tasks and make simple work-related decisions.

(*Id.* at 28).  At step four, the ALJ found that Plaintiff had no past relevant work.  (*Id.* at 33).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of order clerk, optical assembler, and charge account clerk.  (*Id.* at 33-34).  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act.  (*Id.* at 34).

## II.   The Commissioner's Determination is Supported by Substantial Evidence and Free from Reversible Error

Plaintiff asks the Court to either reverse or remand this matter to the Commissioner for further administrative proceedings, arguing that the ALJ's physical and mental RFC findings are unsupported by substantial evidence and that the ALJ erred in weighing the medical opinions of record.  For the reasons set forth below, the Court finds that neither reversal nor remand are warranted.

### A.   Physical RFC Finding

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision."  *Id.* However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings."  *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586

(W.D.N.Y. 2018) (quotation omitted).  "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence." *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation omitted).

Here, the ALJ formulated his physical RFC finding by relying on the medical opinion of consultative examiner Dr. Donna Miller, along with Plaintiff's treatment records and testimony.  Dr. Miller performed a physical examination of Plaintiff on February 4, 2016, and assessed no limitations in sitting, standing, walking, or use of extremities, but opined that Plaintiff should avoid dust, irritants, and tobacco exposure.  (Dkt. 6-1 at 127-29).

The ALJ gave "reduced weight" to Dr. Miller's opinion in assessing Plaintiff's physical RFC.  (Dkt. 6 at 31).  In particular, the ALJ explained that the medical evidence of record did not support the conclusion that Plaintiff needed to avoid respiratory irritants, because her asthma was well-controlled when she was compliant with her treatment.  (*Id*.).  The ALJ further explained that some limitation in Plaintiff's ability to "lift, carry, stand, walk, sit, and engage in postural activities" was appropriate in light of her "ongoing conservative treatment for polyneuropathy[.]"  (*Id*.).  The ALJ noted that Plaintiff had undergone an open reduction, internal fixation surgical procedure due to a right wrist fracture in June 2014—prior to both the alleged onset date and the application date—and that her associated pain and symptoms had "responded well to conservative treatment modalities" such as "medication management, activity modification, home exercises, the use of wrist splints, and specialist treatment with orthopedists."  (*Id*. at 30).  The ALJ further noted that at the consultative examination in February 2016, Plaintiff denied having

any issues with her hands and was observed to have "intact hand and finger dexterity with full bilateral grip strength." (*Id.*).  The ALJ also considered Plaintiff's testimony regarding her abilities, including her testimony that she "experiences a faint feeling in her fingertips after several hours," that standing upright can trigger pain, that she has difficulty sitting, and that she "has difficulty bending and picking up objects." (*Id.* at 29).  The ALJ determined that Plaintiff's claims regarding her symptoms were not fully credible. (*Id.* at 30).  Based on his assessment of all the evidence of record, the ALJ reached the RFC determination set forth above.

The Court finds no reversible error in the ALJ's assessment of Plaintiff's physical RFC.  The ALJ's conclusion that Plaintiff is capable of a limited range of sedentary work is amply supported by Dr. Miller's unremarkable physical examination and associated medical opinion, as well as Plaintiff's treatment records, which generally reflect normal musculoskeletal examinations, including normal upper and lower extremities. (*See, e.g.,* Dkt. 6-1 at 146, 159-60, 165, 184; Dkt. 6-2 at 125, 131, 138, 145, 156, 160, 190, 202, 205). The fact that the ALJ partially credited Plaintiff's testimony regarding her physical abilities and accordingly incorporated exertional and postural limitations into the RFC beyond those identified by Dr. Miller is not a basis for remand. *See Beckles v. Comm'r of Soc. Sec.*, No. 18-CV-321P, 2019 WL 4140936, at *5 (W.D.N.Y. Aug. 30, 2019) ("The ALJ did not err . . . by including greater limitations in her RFC determination than those opined by [Dr.] Miller.").

Plaintiff argues that the ALJ failed to properly consider the opinions of orthopedic surgeon Dr. Lindsay Clark and Nurse Practitioner ("NP") Mary Ellen Brown in assessing

her ability to lift and use her hands.  The Court finds this argument without merit.  As to Dr. Clark's opinions, as the ALJ explained, they were issued in September 2014, prior to the alleged onset date and more than a year before the application date.  (Dkt. 6 at 32; *see* Dkt. 6-1 at 69, 262-63).  Moreover, Dr. Clark expressly opined that the limitations she had identified were expected to last for only "1-3 months."  (Dkt. 6-1 at 263).  The ALJ did not err in concluding that Dr. Clark's opinions were not relevant to Plaintiff's functioning during the time period at issue.

As to NP Brown's opinions, under the regulations applicable to Plaintiff's claims, "nurse practitioners are not considered 'acceptable medical sources,' and their opinions are therefore not 'entitled to any particular weight.'"  *Coger v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 427, 432 (W.D.N.Y. 2018) (alteration omitted and quoting *Wider v. Colvin*, 245 F. Supp. 3d 381, 389 (E.D.N.Y. 2017)).  Accordingly, while the ALJ was required to consider NP Brown's opinions, he was free to discount them to the extent he determined they were inconsistent with the other evidence of record.  Here, the ALJ took into account NP Brown's treating relationship with Plaintiff, but nonetheless afforded little weight to her various opinions because the "extreme limitations" set forth therein were unsupported by the objective medical evidence.  (Dkt. 6 at 32).  The Court finds no error in this conclusion.  *See Coger*, 335 F. Supp. 3d at 434 (finding no error in ALJ's assessment of nurse practitioner's opinion where the severe limitations set forth therein were inconstant with examination findings).  As set forth above, Plaintiff's medical records consistently reflect normal musculoskeletal examinations.  There is no support in the record for, for example, NP Brown's opinion that Plaintiff would need to use a cane or to elevate her legs

for 100% of the day and is unable to sit for longer than ten minutes or walk more than 30 feet.  To the contrary, NP Brown herself recommended that Plaintiff exercise for 30 minutes per day.  (Dkt. 6-2 at 352).

The Court further is not persuaded by Plaintiff's contention that the ALJ failed to explain why he discounted Dr. Miller's opinion that Plaintiff should avoid respiratory irritants.  As noted above, the ALJ explained that he found this portion of Dr. Miller's opinion inconsistent with the evidence of record demonstrating that Plaintiff's asthma was well-controlled with treatment.  (Dkt. 6 at 31).  Moreover, even if the ALJ should have credited this aspect of Dr. Miller's opinion, any error in this regard was harmless, because none of the representative occupations identified by the VE require exposure to respiratory irritants.  *See Dictionary of Occupational Titles* 209.567-014, 1991 WL 671794 (order clerk); *id.* 713.687-018, 1991 WL 679271 (optical assembler); *id.* 205.367-014, 1991 WL 671715 (charge account clerk); *see also Poles v. Berryhill*, No. 17CV6189(MAT), 2018 WL 1471884, at *4 (W.D.N.Y. Mar. 26, 2018) (finding purported error in assessing RFC harmless where it did not impact conclusion that the plaintiff was capable of performing representative occupations identified by VE).

For all these reasons, the Court rejects Plaintiff's argument that the ALJ committed reversible error in assessing her physical RFC.

## B.    Mental RFC Finding

The Court further finds no error by the ALJ in assessing Plaintiff's mental RFC.  In reaching his determination as to Plaintiff's mental RFC, the ALJ afforded "very significant weight" to the opinion of consultative examiner Dr. Gregory Fabiano.  (Dkt. 6 at 31).  Dr.

Fabiano examined Plaintiff on February 4, 2016. (Dkt. 6-1 at 122). He assessed Plaintiff with "[u]nspecified anxiety disorder" and "[o]pioid substance use disorder, in early full remission," and opined that she had "moderate limitations in the ability to maintain attention and concentration and appropriately deal with stress," "some mild limitations in her ability to relate adequately with others," and no limitations in "the ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain a regular schedule, learn new tasks, perform complex tasks independently, or make appropriate decisions." (*Id*. at 125).

Plaintiff contends that in fashioning his mental RFC finding, the ALJ failed to account for Dr. Fabiano's opinion that she had mild limitations in social functioning and moderate limitations in the ability to maintain attention and concentration and appropriately deal with stress. This argument is without merit. Dr. Fabiano also concluded that these limitations would not prevent Plaintiff from following and understanding simple directions and instructions, learning new tasks, performing both simple and complex tasks independently, and making appropriate decisions. (*Id*.). Accordingly, the ALJ's conclusion that Plaintiff could perform "simple, routine, and repetitive tasks and make simple work-related decisions" is fully consistent with Dr. Fabiano's opinion. *See, e.g.,* *Blocker v. Saul*, No. 18-CV-6788F, 2020 WL 1047737, at *6 (W.D.N.Y. Mar. 4, 2020) (finding RFC limiting plaintiff to simple, routine and repetitive tasks in a work environment free of fast-paced production requirements sufficient to account for marked limitation in dealing with stress); *Broadbent v. Saul*, No. 3:18-cv-02127(WIG), 2019 WL 4295328, at *5 (D. Conn. Sept. 11, 2019) (explaining that "courts routinely find that a

claimant who has moderate limitations in memory and concentration can perform simple routine, tasks"); *Williams v. Colvin*, 98 F. Supp. 3d 614, 633 (W.D.N.Y. 2015) ("[T]he ALJ's finding that Plaintiff can engage in simple tasks is consistent with the opinions of Dr. Jones and Dr. Altmansberger, who determined that although Plaintiff had mild to moderate difficulties with regard to concentration, persistence, or pace, she was capable of performing unskilled work."); *Diakogiannis v. Astrue*, 975 F. Supp. 2d 299, 315 (W.D.N.Y. 2013) (limitation to simple, routine, and repetitive tasks accounted for the plaintiff's "mild restrictions in . . . social functioning.").

The Court further finds that the ALJ did not err in affording little weight to NP Brown's opinions regarding Plaintiff's mental impairments.  The ALJ again appropriately found that NP Brown had assessed extreme limitations inconsistent with the evidence of record.  (Dkt. 6 at 32).  For example, NP Brown opined that Plaintiff was "completely agoraphobic" and unable to engage in any social interaction.  (*See id.*).  However, Plaintiff herself testified that she had a boyfriend, that she periodically attended a "self-help group" with a friend, and that she would go shopping with her boyfriend.  (*Id*. at 49, 57).  The ALJ was within his discretion to conclude that Dr. Fabiano's opinion provided a more accurate assessment of Plaintiff's mental functioning than NP Brown's opinions.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 11) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 10) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: January 13, 2021
      Rochester, New York